IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARISSA T., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 20 C 3185 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) Magistrate Judge Finnegan |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Carissa T. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment seeking to affirm the decision. After careful review of the record and the parties' respective arguments, the Court finds that the case must be remanded for further proceedings.

## BACKGROUND

Plaintiff applied for DIB on November 5, 2016, alleging that she became disabled on December 1, 2011 due to rheumatoid arthritis, fibromyalgia, chronic migraines, common variable immune deficiency, osteoarthritis, colitis, anxiety/panic attacks,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

depression, hypogammaglobulinemia, and scoliosis.[2] (R. 188-91, 232). Plaintiff subsequently amended the alleged disability onset date to March 21, 2016. (R. 218). Born in 1979, Plaintiff was nearly 37 years old at the time of her DIB application, making her a younger person (age 18-44). (R. 188); 20 C.F.R. § 404.1563(c); 20 C.F.R. § 416.963(c). She completed one year of college and spent more than five years working as a secretary in a chiropractic office until March 2004. (R. 233). Between January 2003 and November 2007, Plaintiff worked as a Starbucks barista, assistant manager, and then manager. (R. 24-25, 233). In April 2008, she became an order filler for a wholesale book warehouse. (R. 26-28, 233). Following an acute onset of back pain in June 2015, Plaintiff's doctor restricted her to light duty work. (R. 29, 423). It is not clear how long the light duty assignment lasted, but Plaintiff quit the warehouse job on March 21, 2016 due to her conditions and has not worked since that date. (R. 29, 232-33).

The Social Security Administration denied Plaintiff's DIB application initially on January 12, 2017, and again upon reconsideration on May 17, 2017. (R. 75-95, 120-29). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Jessica Inouye (the "ALJ") on February 4, 2019. (R. 13). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from a vocational expert ("VE") Theresa Kopitzke. (R. 14-74). On March 26, 2019, the ALJ found that Plaintiff's fibromyalgia, degenerative disc disease, headaches, allergic rhinitis, depressive disorder, and anxiety disorder are severe impairments, but that they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 102-05). After reviewing

---

[2] It appears that Plaintiff filed a claim for Supplemental Security Income on January 14, 2019. (R. 99). Though that application is not in the record, this opinion assumes Plaintiff is seeking both types of benefits.

2

the evidence in detail, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work involving: occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; no working at unprotected heights or around moving dangerous machinery; and no exposure to extreme pulmonary irritants, extreme wetness/humidity, and temperature changes. Plaintiff also needs to work in a moderate or quiet environment, avoid teamwork or tandem task work, and have only occasional contact with the general public. Finally, Plaintiff is able to: learn, understand, remember, and carry out simple work instructions; handle occasional changes in work and occasional decision-making commensurate with simple instructions; and adequately sustain the concentration, persistence, or pace required for work with the above limitations in 2-hour increments throughout the typical day. (R. 105-10).

The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC would not be able to perform any of Plaintiff's past relevant work. (R. 110-11). However, the person could do a significant number of other jobs available in the national economy such as addressing clerk, document preparer, and final assembler. (R. 111-12). Based on the VE's testimony, the ALJ entered a finding of not disabled. (*Id.*). The Appeals Council denied Plaintiff's request for review (R. 1-6), and that decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g) and 1383(c)(3). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in weighing the opinions from her treating rheumatologist Robert Sun, M.D., and

3

her treating therapist, Marc Genson, LCPC; (2) improperly rejected her own statements and the statements from her mother regarding the limiting effects of her impairments; and (3) failed to account for her moderate mental limitations in the RFC. For the reasons discussed below, the Court agrees that the case must be remanded for further consideration of Dr. Sun's opinion.

## DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's final decision is authorized by the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). *See also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019). The Court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

In making its determination, the Court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete

4

written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). When the ALJ's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

B.   **Five-Step Inquiry**

To recover DIB or SSI, a claimant must establish that she is disabled within the meaning of the Social Security Act.[3] *Shewmake v. Colvin*, No. 15 C 6734, 2016 WL 6948380, at *1 (N.D. Ill. Nov. 28, 2016). A claimant is disabled if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets her burden of proof at steps one through four,

---

[3]   Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

5

the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C. Analysis**

**1. Opinion Evidence**

Plaintiff argues the case must be reversed or remanded because the ALJ erred in assigning weight to the opinions from her treating rheumatologist Dr. Sun, and her treating therapist Mr. Genson. A treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); see *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). If the opinion is contradicted by other evidence or is internally inconsistent, the ALJ may discount it so long as she provides an adequate explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). That is to say, the ALJ must offer "good reasons" for discounting a treating physician's opinion, *Scott*, 647 F.3d at 739, and then determine what weight to give it considering (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(c)(2)-(6); see *Simila*, 573 F.3d at 515.

On January 17, 2019, Dr. Sun completed a Fibromyalgia Residual Functional Questionnaire at the request of Plaintiff's counsel stating that Plaintiff cannot work full-time due to constant fatigue and pain caused by her fibromyalgia. (R. 770). Dr. Sun indicated that Plaintiff has multiple tender points, nonrestorative sleep, severe fatigue, lack of endurance, and impaired concentration, as well as constant pain in the spine, shoulders, legs, and chest. (R. 769). Dr. Sun opined that Plaintiff's concentration and attention are frequently impacted by fatigue and pain, and she has a moderate limitation in her ability to deal with work stress. Plaintiff also needs to lie down at unpredictable intervals during a work shift and would be absent more than three times per month. (*Id.*). Dr. Sun characterized Plaintiff's prognosis as guarded. (R. 769).

In affording this opinion little weight, the ALJ first explained that it was inconsistent with Dr. Sun's own treatment notes showing largely benign findings. (R. 109). Plaintiff started treating with Dr. Sun on February 9, 2017. (R. 777). A physical exam revealed +16/18 tender points and Dr. Sun diagnosed diffuse pain that was likely fibromyalgia. He explained that Plaintiff's treatment needed to be "multidisciplinary," consisting of medications, exercise, mental health treatment, and good sleep hygiene. In that regard, Dr. Sun referred Plaintiff for a sleep study. (R. 779). In April 2017, Plaintiff underwent a Sleep Medicine Evaluation and was subsequently prescribed a CPAP machine for mild obstructive sleep apnea. (R. 805, 813, 816, 904).

When Plaintiff next saw Dr. Sun on December 18, 2017, she reported continued fatigue despite using the CPAP machine, as well as some upper and lower back pain. (R. 822). A physical exam once again showed +16/18 tender points. (R. 824). Dr. Sun advised Plaintiff to gradually increase her exercise, take gabapentin for pain, and return

in four months. (*Id.*). At that May 30, 2018 visit, Plaintiff was still complaining of fatigue and pain but she also reported that she never tried the gabapentin. (R. 827-28). Dr. Sun once again instructed Plaintiff to increase her exercise, start taking gabapentin, and return in 3-4 months. (R. 830). On September 5, 2018, Plaintiff told Dr. Sun that she had not been feeling well lately but had never tried the gabapentin. She complained of new pain in her midback lasting two months which she attributed to doing yoga. (R. 843). Plaintiff continued to exhibit +16/18 tender points and Dr. Sun instructed her to start physical therapy ("PT") and return in 3-4 months. (R. 844, 845).

The ALJ did not mention any of these records or articulate which findings she deemed "benign." (R. 109). Focusing on fatigue, the ALJ concluded that Dr. Sun's treatment notes "do not suggest debilitating fatigue" even though that was a primary basis for his opinion. (*Id.*). There is some truth to this observation, as Dr. Sun made no mention of fatigue in his February 9, 2017 note (R. 777-79), and thereafter simply observed: "fatigue still there." (R. 822, 12/18/2017; R. 827, 5/30/2018; and R. 843, 9/5/2018). *See, e.g., Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline to credit a treating physician's opinion "when the opinion is inconsistent with the physician's treatment notes."); *Recha v. Saul*, 843 F. App'x 1, 5 (7th Cir. 2021) ("[T]he ALJ was correct to afford little weight to [treating opinion] evidence because many of the statements included in the letter . . . were contradicted by [the doctor's] own treatment notes.").

Yet the ALJ largely ignored Dr. Sun's opinion regarding constant pain, a symptom he documented at every exam. (R. 779, 824, 828-29, 843-45). Even more concerning, other reasons the ALJ gave for rejecting Dr. Sun's opinion are improper. For example, the ALJ noted that Dr. Sun failed to acknowledge Plaintiff's "own contributory role with

8

regards to her condition as she has not followed his treatment recommendations," namely, taking gabapentin. (R. 109). But Dr. Sun clearly documented that Plaintiff is "intolerant to many meds" (R. 779, 829, 824), and at the September 5, 2018 visit he recommended that she "*not* start gabapentin." (R. 845) (emphasis added). The ALJ also found it significant that Dr. Sun never recommended other treatments such as physical therapy, "which would be expected if [Plaintiff] were as limited as he has assessed." (R. 109). As noted, however, Dr. Sun did refer Plaintiff for PT at the September 5, 2018 appointment. (R. 845).

Viewing the record as a whole, the ALJ did not build a logical bridge between the evidence and her decision to assign only little weight to Dr. Sun's opinion. The case must be remanded for further consideration of this issue.

### 2. Remaining Arguments

The Court does not find any specific error with respect to Plaintiff's remaining arguments but the ALJ should take the opportunity on remand to review any updated treatment notes from Mr. Genson, and to reevaluate the testimonial evidence regarding the limiting effects of Plaintiff's symptoms.

### **CONCLUSION**

For reasons stated above, Plaintiff's request to reverse or remand the ALJ's decision is granted, and the Commissioner's Motion for Summary Judgment [20] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: July 18, 2022

_____
SHEILA FINNEGAN
United States Magistrate Judge